**David ROBINSON, Plaintiff,**

v.

**John R. BLOCK, Secretary of Agriculture; Everett G. Rank, Chief Administrator, Agricultural Stabilization and Conservation Service; Commodity Credit Corporation, United States Department of Agriculture; and Thomas A. Von Garlern, Assistant Deputy Administrator, State and County Operations Agricultural Stabilization and Conservation Service, U.S. Department of Agriculture, jointly and severally, Defendants.**

No. G 84–542.

United States District Court,
W.D. Michigan, S.D.

Feb. 12, 1985.

Gary Schenk, Grand Rapids, Mich., for plaintiff.

Anne Vandermale Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

Plaintiff, a farmer, filed this action May 31, 1984, seeking equitable and monetary relief for Defendants' reduction of his grain allotment received pursuant to the 1983 Payment-In-Kind (PIK) program. This matter is now before the Court after oral argument on November 13, 1984 upon Defendants' Motion to Dismiss filed August 3, 1984.

The PIK program operates pursuant to the Agricultural Act of 1949, as amended (7 U.S.C. § 1441 *et seq*), the Commodity Credit Corporation Charter Act, as amended (15 U.S.C. § 714 *et seq*), and the regulations promulgated pursuant to these Acts (7 C.F.R. Parts 713 and 770). The program provides participating agricultural producers crops for resale if the producer agrees not to plant certain commodities during the specific crop year in an effort to reduce surplus stores of certain crops. The Defendants have varying degrees of involvement in and responsibility for the program. The three individual Defendants are employees of the United States Department of Agriculture; Defendant Block is its Secretary. The corporate Defendant, the Commodity Credit Corporation (CCC), is an agency of the United States Department of Agriculture.

In the spring of 1983, Plaintiff contracted with the CCC to participate in the 1983 PIK program for corn. He was notified by the Agricultural Stabilization and Conservation Service (ASCS), acting through the

Montcalm County Agricultural Stabilization and Conservation Committee (County ASC), that he was entitled to receive 10,720 bushels of corn under this program. After the time when Plaintiff's corn actually could have been planted, he was erroneously notified by the County ASC that he was entitled to 10,810 bushels, an increase of 90 bushels. Between April of 1983 and October of 1983, Plaintiff forward-contracted the sale of the 10,810 bushels. In October 1983, the ASCS notified Plaintiff that he was actually entitled to only 8,720 bushels, a reduction from the highest calculation by more than 2,000 bushels. Plaintiff alleges that this unilateral action, taken after harvest, deprived him of an opportunity to plant additional corn to make up for the difference, and the opportunity to make appropriate market decisions. Plaintiff administratively appealed the reduction in his grain allotment pursuant to 7 C.F.R. Part 780, but his appeal was denied.

Count 1 of Plaintiff's Complaint alleges that Defendants' actions induced him to rely upon the PIK contract he had entered into, and that in reliance, he did not plant corn and entered into forward contracts. For his relief under Count 1, Plaintiff requests that the Court enjoin the Defendants to deliver the remaining 2,090 bushels as agreed in the contract. He also requests that the Court find that Defendants are estopped from denying their promise, or from asserting any defense. In Count 2, Plaintiff alleges that the Defendants breached their contract with him by their unilateral change of contract terms and their refusal to honor the contract as written. He asserts monetary damages in excess of $10,000 and requests compensation, attorney fees and costs.

■ Defendants assert four bases for dismissal. The first concerns this Court's lack of jurisdiction pursuant to the Tucker Act, 28 U.S.C. §§ 1346 and 1491, which requires that all suits against the federal government for breach of contract be brought in the Court of Claims if the damages asserted exceed $10,000. This issue need not be addressed. In his brief in opposition, Plaintiff concedes the applicability of the Tucker Act and relinquishes recovery in excess of $10,000 so that this suit may remain in district court, which has jurisdiction concurrent with the Court of Claims for breach of contract claims against the federal government when damages asserted are $10,000 or below.

A second asserted basis of dismissal concerns the finality of the administrative fact finding initiated by Plaintiff in his appeal pursuant to 7 C.F.R. Part 780. Defendants argue that § 385 of the Agricultural Adjustment Act, 7 U.S.C. § 1385, precludes review of any of the facts constituting the basis of Plaintiff's grain allotment, though it does not prohibit judicial review of the legal questions involved. Because this issue presents questions relevant to this Court's jurisdiction it must be addressed.

> Section 385 provides in pertinent part: The facts constituting the basis for ... any payment under the wheat, feed grain, upland cotton, and rice programs authorized by the Agricultural Act of 1949 and this chapter, ... when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the government.

Citing *Buckland v. United States,* Case No. 81–4059 (D.Kan.1983), Defendants assert that though legal questions are judicially reviewable, because Plaintiff has failed to raise questions concerning whether the agency exceeded its statutory authority, satisfied the requirements of due process, acted in accord with its regulations, or reached its determination arbitrarily and capriciously, the Court is without power to resolve this dispute and Defendants' motion should be granted *a fortiori.*

Plaintiff asserts in his brief in opposition that he does not ask this Court to make any redetermination concerning the calculations used to arrive at his final grain allotment. Instead, he asserts that his complaint alleging breach of contract essential-

ly seeks a legal determination concerning whether Defendants breached the contract, acted arbitrarily and capriciously, exceeded their statutory authority or acted in accordance with their regulations. Relying on *U.S. v. Kopf,* 379 F.2d 8 (CA 8 1967), Plaintiff characterizes the legal issues presented as requiring a decision whether Defendants' change in Plaintiff's grain allotment after Plaintiff's performance of the PIK contract was proper.

▮▮▮ Defendants correctly state the law. Judicial review of legal questions is not prohibited by § 385, and indeed this section may be unconstitutional were it construed to prohibit such review. *Aycock-Lindsey Corporation v. United States,* 171 F.2d 518 (CA 5 1948). In addition, Defendants correctly observe that Plaintiff has not exclusively raised in his complaint the narrow list of legal issues deemed reviewable by *Buckland, supra.* However, in requesting that the Court determine whether a breach of contract has occurred, Plaintiff necessarily raises this legal issue in the context of the statutes and regulations which govern the PIK program. Accordingly, even if those issues listed in *Buckland, supra,* were exhaustive on the legal issues permissibly reviewable by this Court in this action, Plaintiff's complaint for breach of contract would not be precluded. Whether breach of contract has occurred depends on whether Defendants have correctly carried out their statutory and regulatory duties. I therefore find that § 385 of the Agriculture Adjustment Act of 1938 does not preclude review by this Court of Plaintiff's Complaint. Therefore, Defendants' Motion to Dismiss on this ground is denied.

▮▮▮ As a third basis for dismissal, Defendants argue that Plaintiff may not assert estoppel against these federal Defendants, and further, that in view of the doctrine enunciated in *FCIC v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) Defendants should prevail on the merits. Plaintiff, on the other hand, urges that the issues he raises are so similar to those in

*Kopf, supra,* that it is dispositive of the entire case.

Plaintiff correctly identifies the primary issue addressed by *Kopf, supra,* as

whether the Secretary of Agriculture under the applicable statutes and regulations can alter a crop yield determination which has become final and binding as to the producer after the producer has substantially participated and complied with the program. 379 F.2d at 10.

In identifying this as similarly the issue here, Plaintiff assumes the initial determination of his grain allotment by the County ASC is final and binding as to him. In *Kopf, supra,* the court stated that absent clear statutory authority to the contrary, a decision final as to one party should be final as to the other. 379 F.2d at 12. The threshold issue, then, is whether the initial grain allotment determination was final as to either Plaintiff or Defendants.

On this issue, *Kopf* is readily distinguishable from the present case. In *Kopf,* the County ASC committee notified plaintiffs in early 1962 of its determination establishing their corn yield for purposes of their participation in the Feed Grain Programs established pursuant to the Soil Conservation and Domestic Allotment Act, 16 U.S.C. § 590a *et seq.* Plaintiffs timely requested a redetermination of this corn yield and an evidentiary hearing was held before the County committee. Evidence was introduced at this hearing and the corn yield was adjusted upward. Notices were mailed to plaintiffs on the appropriate forms informing them of the upward adjustment of May 1962 and no further appeal or review was requested by either the plaintiffs or the government. In 1963 the County ASC board adopted the same corn yield used for 1962, and similarly no review or appeal was requested. Subsequently, the County committee requested plaintiffs to resubmit the evidence upon which the upward adjustment was based. In the review of these submissions, the County board informed plaintiffs the crop yields had been improperly increased and demanded repayment of benefits. The *Kopf*

court determined that under the applicable regulations, the County committee's determination pursuant to the evidentiary hearing had been valid and had become final.

No such final determination was made here until completion of the appeal process Plaintiff initiated pursuant to 7 C.F.R. Part 780. The initial grain allotment was not final and binding in the same sense. The PIK contract which Plaintiff signed specifically states that the terms and conditions of its Appendix apply to the contract. The Appendix states that:

> Farm yield means the 1983 yield for the farm determined in accordance with § 713.6 of 7 CFR Part 713, adjusted to reflect any determination made with respect to such yield as the result of administrative appeals conducted in accordance with 7 CFR Part 780. App. § 1(C).

Section 780.3 of 7 C.F.R. Part 780 provides that any producer or participant may obtain a reconsideration of any initial determination made by the County or State committee or the Deputy Administrator. Therefore, the farm yield upon which Plaintiff's grain allotment was based in the PIK contract which he signed was not final as to him, but subject to redetermination at his request. For this reason Plaintiff's reliance upon *Kopf, supra,* is misplaced. In *Kopf* not only had the plaintiffs undergone an evidentiary hearing concerning the County committee's initial determination, but the findings pursuant to that hearing had become final as to the plaintiffs. Accordingly, I disagree with Plaintiff and find that *Kopf, supra,* is not dispositive of the entire case.

On the contrary, I find that the doctrine established in *Merrill, supra,* its progeny, and related cases, is dispositive. In *Merrill, supra,* the Supreme Court determined that farmers who had relied upon erroneous assurances of a County committee that their reseeded winter wheat acreage was insured pursuant to the Federal Crop Insurance Act, 7 U.S.C. § 1503, were nevertheless unprotected by that Act for the loss of their crop. The court stated:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. 332 U.S. at 384, 68 S.Ct. at 3.

The court found that the farmers were charged with knowledge of the rules which had appeared in the Federal Register concerning the coverage of reseeded wheat acreage.

Plaintiff argues that unlike in *Merrill, supra,* there is no issue here concerning the authority of the County committee to enter into the contract with Plaintiff. However, the County's capacity to contract is not in issue. The issue is whether the initial grain allotment determination made by the County committee was within its authority. Defendants correctly assert that it was not. The County committee incorrectly computed the blended yield for Plaintiff's farm when initially determining the grain allotment, and this initial determination consequently fell outside the allowable farm yield limits provided for in 7 C.F.R. § 713.6 and 7 C.F.R. § 713.10(b). *See* Document # 3, Record of the Administrative Appeal of David Robinson Pursuant to 7 C.F.R. Part 780.

Plaintiff additionally argues that he should not be held accountable for ignorance of the regulations applicable to farm yield determinations, for the County committee itself is ignorant of its own regulations and improperly made the initial determination. For several reasons, Plaintiffs' argument is without merit.

First, the court in *Merrill, supra,* explicitly found that the farmers were responsible for knowledge of the regulations governing the crop insurance program even though the county agent himself may have

822

been unaware of the limitations which those regulations placed upon his authority. The Supreme Court has recently twice reaffirmed the *Merrill* principle that erroneous representations by government officials cannot estop the government, and that persons who deal with the government are presumed to know the regulations applicable to their dealings. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). *Heckler v. Community Health Services of Crawford County, Inc.*, — U.S. —, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Plaintiff's attempt to distinguish these cases from his is unsuccessful. Plaintiff similarly attempts to distinguish *U.S. v. Batson*, 706 F.2d 657 (CA5 1983), in which the court charged the farmers participating in the upland cotton program with knowledge of the program's basic regulations, and found that their activities amounted to a "scheme or device which tends to defeat the purpose of the program". 706 F.2d at 683. Plaintiff urges that because it cannot be shown that he has acted in a similarly "bad faith" manner, *Batson* is inapplicable. However, Plaintiffs' good faith is not in issue. Plaintiff need not act in bad faith to be held accountable for knowledge of the relevant regulations. *Merrill, supra. Hansen, supra.*

Second, Plaintiff had actual notice of the regulations governing his participation in the PIK program. The Appendix to the contract which he signed contains the list of those regulations, including a clear explanation of the definition of farm yield upon which his grain allotment was based. Plaintiffs' assertion of ignorance of these regulations is therefore unfounded.

Finally, even if estoppel were available to Plaintiff for use against these Defendants, his asserted reliance would fail. Plaintiff states that he forward-contracted the total amount of the highest grain allotment determination and has suffered injury by being unable to comply with all of these forward contracts. Section 12D of the appendix to the PIK contract provides that:

Assignments with respect to quantities of a crop which can be received by a producer as payment-in-kind shall be made only if the assignor and assignee execute and file with the County Committee a Form CCC–479, Assignment of Payment-in-Kind.

Plaintiff did not comply with this requirement as evidenced by the copies of these forward contracts contained in the administrative appeal record. *See* Document No. 11 with attachments, Record of the Administrative Appeal of David Robinson, Pursuant to 7 CFR Part 780.

For these reasons, the Court finds that *Merrill, supra*, is dispositive of this matter and that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Accordingly, Defendants' Motion to Dismiss shall be granted. This Court is not particularly pleased with this result. Though the law is not favorable to Plaintiff, justice would seem to require a different result. The Court takes judicial notice that farming is at best a tenuous venture, filled with uncertainties. To add to these uncertainties the requirement that a farmer, unskilled in the ways of the law, be intimately familiar with complex regulations seems to be to heap a burden on the farmer beyond his or her rationally justifiable necessity to carry. As the court in *Kopf, supra*, noted:

Farmers, before determining whether to participate in a program such as this, carefully weigh the benefits offered for compliance against the crops lost by diverting corn acreage. Without firm assurance from the government before planting time as to payment available for compliance, very few farmers would participate in the program. 379 F.2d at 14.

In view of the Court's disposition of the Defendants' third basis for dismissal, it is unnecessary to address their fourth, which concerns the availability to Plaintiff of injunctive relief.