Kenneth D. STRONG and Thomas M. Strong, Plaintiffs,

v.

Dan GLICKMAN, Secretary, United States Department of Agriculture, Defendant.

No. Civ.A. 95–1624 SSH.

United States District Court, District of Columbia.

Jan. 15, 1999.

Alexander J. Pires, Jr., Conlon, Frantz, Phelan, Knapps & Pires, Washington, DC, for plaintiffs.

AUSA Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are the parties' cross-motions for summary judgment, filed in

both this Court and the Court of Federal Claims.[1] Upon careful consideration of the parties' motions, the oppositions and replies thereto, and the entire record, the Court denies plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56. . . ." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## BACKGROUND

In 1985, Congress established the Conservation Reserve Program ("CRP"), which was designed to encourage owners of highly erodible lands with eligible cropping histories to take those lands out of agricultural production in order to "conserve and improve the soil and water resources of such lands." 16 U.S.C. §§ 3801, 3831–3832. Under the program, the Commodity Credit Corporation ("CCC"), a wholly-owned government corporation within the United States Department of Agriculture ("USDA"), enters into ten-year CRP contracts with farmers. *Id.* at § 3831; 7 C.F.R. §§ 704.2(a)(7)—(a)(8), 713.1(a) (1987). Farmers must agree to

"implement a plan . . . for converting eligible lands normally devoted to the production of an agricultural commodity on the farm . . . to a less intensive use . . .," 16 U.S.C. § 3832(a)(1), and in return for taking the land out of production, farmers receive annual payments based on the per-acre bid submitted for the contract. *See id.* at §§ 3833(2)(A), 3834(c)(2)(A); 7 C.F.R. § 704.2(a)(4) (1987). The program is administered by the USDA's Agricultural Stabilization and Conservation Service ("ASCS"). *See id.* at § 704.3(a).

In early 1987, plaintiffs submitted a per-acre bid for their land in an attempt to be accepted into the CRP program. Although plaintiff Kenneth Strong certified to the ASCS Delta County Committee ("COC") that in 1984 sweet clover (a legume) was planted on his farm and that it was a biennial crop that would grow again in 1985, the Delta COC denied plaintiffs' application on March 5, 1987. Administrative Record ("A.R.") at 427. The denial was due to the fact that only one legume had been grown on the land between 1981 and 1985 and, thus, no "agricultural commodity," within the meaning of the statute, had been grown on the land between 1981 and 1985.[2]

1. The case originally was filed in this Court in 1995. The parties filed cross-motions for summary judgment. As part of his motion for summary judgment, defendant included a motion to transfer the case to the Court of Federal Claims. By Opinion and Order dated August 13, 1996, the Court granted defendant's motion to transfer. The parties refiled their cross-motions for summary judgment in the Court of Federal Claims. The Court of Federal Claims then, *sua sponte*, determined that it did not have jurisdiction over the case, and re-transferred it to this Court on October 9, 1997.

2. To be eligible for participation in the CRP program, land "must have been annually planted . . . to produce an agricultural commodity . . . in 2 of the 5 crop years, 1981 through 1985." 7 C.F.R. § 704.7(a)(1) (1989) (adopted as a final rule in 52 Fed.Reg. 4265, 4271 (Dep't Agr.1987)). Legumes such as sweet clover are considered to be "agricultural commodities" only if they are planted "in

rotation, as approved by the Secretary." *Id.* § 704.2(a)(1). The ASCS Deputy Administrator of State and County Operations ("DASCO"), who is in charge of administering the CRP, issued an internal guidance to ASCS employees about when legumes could be considered "agricultural commodities" within the meaning of § 704.2(a)(1). The "CRP–54," as the guidance is called, provides in relevant part:

5 DEFINITION OF AGRICULTURAL COMMODITY FOR CRP
Alfalfa and other multi-year legumes and grasses grown in rotation with another agricultural commodity shall be considered agricultural commodities for CRP. . . .

6 DETERMINING ELIGIBILITY OF GRASSES OR LEGUMES AS A COMMODITY
A If grasses and legumes planted during the years 1981 through 1985 are used in establishing land eligibility, COC's shall determine whether:

By a letter dated March 19, 1987, plaintiff Kenneth Strong requested that the Delta COC reconsider its position on whether he had established a "crop rotation" sufficient to allow his sweet clover to be considered an "agricultural commodity." He certified that he planted barley on his land in 1986 and planned to do so again in 1987, and argued that this established the required rotation. A.R. at 54–55. On April 7, 1987, the Delta COC met to consider plaintiff Kenneth Strong's request. Based on "what Strong ... stated in his appeal letter, and what he [was] going to do in his future rotation plan," the Delta COC approved plaintiffs for eligibility in the CRP program.[3] A.R. at 57. Plaintiffs were entitled to annual payments of $44,129 for the ten-year period beginning in 1988 and continuing through 1997, plus $119,590 to meet the cost of installing the required vegetative cover. A.R. at 2, 373.

In 1991, the USDA Office of Inspector General ("OIG") began a review of various Alaska ASCS offices in response to allegations that ASCS programs in Alaska were not administered in accordance with applicable regulations, resulting in improper program payments to selected producers. A.R. at 201. The OIG determined that the Delta COC had improperly reversed itself in granting plaintiffs a CRP contract. The report stated specifically that "[b]ecause the producer did not strictly comply with the requirements to plant an agricultural commodity in two of the years 1981–1985 and his crop rotation pattern was not clearly established at the time, we do not believe the producer was eligible to participate in the CRP." A.R. at 220–21.

By a letter dated October 1, 1992, the Alaska ASCS Office formally notified plaintiffs that their CRP contract was canceled. A.R. at 194–95. Plaintiffs appealed to the Alaska State Committee ("SOC"), but the Alaska SOC upheld the cancellation on October 7, 1993. A.R. at 113–36. The Alaska SOC found, *inter alia,* that plaintiffs' proposed rotation was not recognized under state standards and that the Delta COC should not have used a time frame which included the period after 1985 to determine CRP eligibility. A.R. at 122–23.

Plaintiffs then appealed to the National Appeals Division ("NAD"). The NAD denied plaintiffs' appeal on June 3, 1994, basing its decision on, *inter alia,* its determination that plaintiffs' "planned" rotation presented in 1987 was not an "established planting pattern," and therefore could not be considered a "rotation" under the regulations. A.R. at 30–42. Plaintiffs were allowed to retain all CRP payments already issued, plus a 1992 payment which included interest after the Alaska SOC determined that the 1992 payment was withheld in error. The total amount paid to plaintiffs from 1988–1995 was $220,645.

Plaintiffs filed the instant case on August 24, 1995. The complaint alleges that defendant violated the Administrative Procedure Act ("APA") by canceling plaintiffs' CRP contract.

## STANDARD OF REVIEW

█ The APA provides for judicial review of agency action if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The

---

1 The grasses and legumes were being grown in rotations with another agricultural commodity....

B Grasses and legumes are considered agricultural commodities only if grown in rotation within the number of years established for a rotation practice.

C Land broken out since 1980 and planted only to alfalfa and other legumes or grasses that are still present, is not eligible for CRP.

A.R. at 151–52.

3. Although the minutes of the meeting state that this action was taken "in concurrence with the State committee and DASCO approvals," according to the USDA office of Inspector General ("OIG") report no approval was ever given. *See* A.R. at 57, 220–21.

scope of review under the "arbitrary and capricious" standard is narrow, and a court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

## DISCUSSION

Plaintiffs allege that defendant's decision to cancel their CRP contract violated the APA in several ways. First, plaintiffs contend that the determination by the Delta COC that plaintiffs met the eligibility requirements for participation in the CRP program was "final," and, hence, unreviewable. *See* 7 U.S.C. § 1385. They further argue that, even if the Delta COC decision was not unreviewable, there was no statutory or regulatory basis for canceling their contract other than provisions of ASCS Handbooks which were not duly published regulations. *See* 5 U.S.C. §§ 551, 553. Finally, plaintiffs contend that, as a matter of equity, defendant should not have canceled plaintiffs' CRP contract. The Court addresses each argument in turn.

## A. The Finality Rule

Plaintiffs' main argument is that defendant's reversal of the Delta COC's decision is "not in accordance with the law" because it violates the "finality" rule set forth in 7 U.S.C. § 1385.[4] *See* 5 U.S.C. § 706(2)(A). Section 1385 provides, in relevant part:

> The facts constituting the basis for any ... payment under [the farm programs] ... when officially determined in con-

formity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government....

Plaintiffs argue that the Delta COC's determination that their planned rotation of sweet clover and barley met CRP eligibility requirements could not be reversed by the Alaska SOC or the NAD because it was "final" within the meaning of § 1385.

■ The Court cannot agree with plaintiffs' contention. As an initial matter, § 1385 does not prohibit the USDA from reviewing its own decisions. *Gross v. United States,* 205 Ct.Cl. 605, 505 F.2d 1271, 1276 (1974); *Westcott v. United States Dep't of Agriculture,* 611 F.Supp. 351, 353 (D.Neb.1984), *aff'd* 765 F.2d 121 (8th Cir.1985) (*per curiam* ); *see also Peterson Farms I v. Madigan,* 1992 WL 118370 at *8 (D.D.C.), *aff'd sub nom Peterson Farms I v. Espy,* 15 F.3d 1160 (D.C.Cir.1994). According to its plain language, § 1385 only shields factual findings from review "by any other officer or agency of the Government"; it does not prohibit review within the USDA.[5] *See Gross,* 505 F.2d at 1276.

■ But even were the Court to accept plaintiffs' assertion that § 1385 precludes intra-agency review of "final" factual determinations, the statute still would not aid plaintiffs. Section 1385 only protects from review "[t]he facts ... when officially determined in conformity with the applicable regulations." In this case,

---

4. Plaintiffs also argue that the NAD's decision violated 7 U.S.C. § 1433e(g) (1993) (repealed in 1994). That section, however, was enacted in 1990, and applied only to State or county committee determinations after the date of enactment. *See id.* note; Food, Agriculture, Conservation & Trade Act of 1990, 104 Stat. 3359, 3515 (1990). Since the relevant Delta COC decision was made in 1987, § 1433e does not apply.

5. This language stands in notable contrast to the "new" finality rule, which provides that "[d]ecisions of the State and county commit-

tees ... made in good faith in the absence of misrepresentation, false statement, fraud, or wilful misconduct, unless otherwise appealed under this section, shall be final, unless otherwise modified ... within 90 days." *See* 7 U.S.C. § 1433e (1993). It is significant that when § 1433e was codified in 1990, Congress did not repeal § 1385. This indicates that the two served distinct purposes— § 1385 precluded judicial review of factual findings and § 1433e gave a degree of intra-agency finality to State and county committee findings of fact.

although the NAD based its decision to cancel plaintiffs' CRP contract in part on a factual determination that the "actual planting history for the acreage offered by Appellants was not as stated by Appellants in March 1987," this new factual finding was not dispositive. A.R. 37–38. The NAD also determined that, as a legal matter, the planned rotation that plaintiffs proposed in March 1987 did not qualify as an established rotation. *See id.* In other words, even accepting the Delta COC's "finding" that plaintiffs planted sweet clover in 1984 and 1985 and barley in 1986 and 1987, the NAD determined that the Delta COC had not properly interpreted the applicable regulations when it decided that this cropping history was sufficient to qualify the land for the CRP program.[6] *See* A.R. at 38 (NAD determination that plaintiffs did not have an "established planting pattern for the acreage" which would constitute a "rotation" within the meaning of 7 C.F.R. § 704.2(a)(1)); A.R. at 122–23 (Alaska SOC determination that the Delta COC had erred in considering plantings in 1986 and 1987 in determining whether there was a "rotation" within the meaning of § 704.2(a)(1)). Section 1385 "poses no obstacle to decision of legal questions." *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989). Thus, defendant did not violate any finality rule when he determined that plaintiffs had not established a rotation sufficient to allow their sweet clover to be considered an "agricultural commodity."

6. The fact that the NAD decision was based in part on the determination that the Delta COC had misinterpreted the meaning of a "rotation" in § 704.2(a)(1) distinguishes this case from *United States v. Kopf,* 379 F.2d 8, 11–13 (8th Cir.1967), where the reversal was based solely on a factual re-evaluation.

It is also questionable in this case whether the Delta COC ever made "factual" determinations within the meaning of § 1385, since the Delta COC did not hold a formal factfinding inquiry but rather based its decision on "what Strong ... stated in his appeal letter, and what he [was] going to do in his future rotation plan." *See* A.R. at 57; *see also Jones*

## B. Regulatory Authority for Terminating the CRP Contract

Plaintiffs next contend that the NAD's decision to cancel their CRP contract should be reversed because it was based in large part on portions of the ASCS Handbook which were promulgated without the notice and comment required by the APA. *See* 5 U.S.C. § 553. Defendant contends that the Handbook provisions, such as CRP–54, were simply used as guidance for enforcement of 7 C.F.R. §§ 704.2(a)(1), 704.7(a)(1), and 704.23. The Court agrees with defendant.

There is no clear line distinguishing substantive rules, which must be promulgated with notice and comment, from interpretive rules, which have no such requirement. *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1045 (D.C.Cir.1987). This Circuit has indicated that, in general, rules are interpretive if they "are not determinative of issues or rights addressed[,] . . . . express the agency's intended course of action, its tentative view of the meaning of a particular statutory term . . . . [and] do not ... foreclose alternate courses of action or conclusively affect rights of private parties." *Id.*

■ Unlike the Handbook regulation struck down in *Jones v. Espy,* 1993 WL 102641 (D.D.C.1993), (cited by plaintiffs), the CRP–54 was not the "sole authority for depriving plaintiffs" of their CRP contract. *Id.* at *10. Published regulations make it

*v. Hughes,* 400 F.2d 585, 589–90 (8th Cir.1968). Moreover, the reasoning in *Kopf* is only persuasive when factual determinations made by the local committee are "final." *See Peterson Farms I,* 1992 WL 118370 at *9; *Robinson v. Block,* 608 F.Supp. 817, 821 (W.D.Mich.1985). In this case, plaintiffs knew that their CRP eligibility hinged on their representation that they would plant another crop of barley in 1987. *See* A.R. at 57. There cannot have been a final factual determination by the Delta COC that plaintiffs planted barley in 1987 if it was only in the planning stages when the Delta COC made its eligibility decision.

clear that in order to be considered an "agricultural commodity," a legume must be planted "in rotation." 7 C.F.R. § 704.2(a)(1). Although the CRP–54 also indicates that legumes may be "agricultural commodities" if they are grown in a rotation with another agricultural commodity, the NAD did not base its decision that plaintiffs never had a "rotation" within the meaning of 7 C.F.R. § 704.2(a)(1) solely on CRP–54. *See* A.R. at 38. Thus, the NAD did not violate the APA when it determined that plaintiffs' land was not eligible for the CRP program.

For the same reasons, defendant's decision to terminate plaintiffs' CRP contract based on an inadequate cropping history was not in contravention of the APA. Section 704.23 of the C.F.R. provides:

> If, after a CRP Contract is approved by the COC on behalf of CCC, it is discovered that such CRP Contract is not in conformity with the provisions of this part as the result of a misunderstanding of the program procedures ... [and] the parties to the CRP Contract cannot reach agreement with respect to [a] modification, the CRP Contract shall be terminated....

The NAD determined that "[t]here is no modification which can alter the acreage's ineligibility and there is no basis for extending CRP benefits on ineligible acreage," and thus it upheld the termination of plaintiffs' contract. A.R. at 40. Though plaintiffs contend that the NAD improperly relied on Handbook 2–CRP (Revision 1), which provides that a CRP contract with an erroneous cropping history cannot continue, that is not what the administrative record shows. According to the administrative record, the NAD expressly did not rely on the handbook provision because it "agree[d] handbook 2–CRP (Revision 1) did not exist in 1987." A.R. at 40.

In sum, defendant did not improperly rely on any unpublished regulations when it held that plaintiffs did not have the required cropping history for participation in the CRP program and canceled plaintiffs' CRP contract. Beyond arguing that defendant's decision was based on an unpublished regulation, plaintiffs have not demonstrated how the decision was inconsistent with published regulations. Since an agency's interpretation of its own regulation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation," *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), the Court concludes that defendant not violate the APA when it decided to cancel plaintiffs' contract.

## C. Good Faith Reliance

Finally, plaintiffs argue that because all the statutes under which deficiency and other subsidy payments are made provide language by which equitable relief may be given to the farmer or producer, defendant acted arbitrarily by canceling plaintiffs' contract. This argument necessarily relies on plaintiffs' factual assertion that "there is no evidence that plaintiffs did anything but exercise good faith" in managing their land in compliance with the CRP contract. The Court cannot agree with this assertion, especially in light of the NAD's inability to make a finding that plaintiffs planted the barley they said they did in 1986, and its determination that plaintiffs had reason to believe that their land was not eligible for the CRP program. A.R. 39–41. Since the NAD's decision regarding plaintiffs' cropping history is rationally based on the administrative record, there is no evidence that defendant acted arbitrarily in not granting plaintiffs equitable relief in the form of reinstating their CRP contract. *See Peterson Farms I,* 1992 WL 118370 at *9–10.

## CONCLUSION

Because defendant's decision to cancel plaintiffs' CRP contract was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, the Court grants defendant's motion for summary judgment and denies plain-

tiffs' motion for summary judgment. In accordance with Federal Rule of Civil Procedure 58, a separate Judgment accompanies this Opinion.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion for summary judgment is denied. It hereby further is

ORDERED, that defendant's motion for summary judgment is granted.

SO ORDERED.