**Donald B. BEARD and Celeste Svihovec Beard**

v.

**Dan GLICKMAN, Secretary of Agriculture**

**No. 99–01752–GHK.**

United States District Court, C.D. California.

Feb. 7, 2001.

**PROCEEDINGS: Cross Motions for Summary Judgment**

KING, District Judge.

This matter is before the court on Cross Motions for Summary Judgment in the form of a joint briefing ordered by the court. These motions are appropriate for resolution without oral argument. Fed. R.Civ.P. 78; Local Rule 7.11. After fully considering the briefs and papers pertaining to this matter, we rule as follows:

### I. Background

Plaintiffs Donald B. Beard and Celeste Svihovec Beard (the "Beards") filed their original complaint on February 19, 1999. The Beards filed their Third Amended Complaint ("TAC") on May 4, 2000, in which they seek declaratory and injunctive relief against the Secretary of Agriculture for the alleged arbitrary and capricious

denial of their property's enrollment in the United States Department of Agriculture's ("USDA") Conservation Reserve Program ("CRP").

In 1985, Congress established the CRP, which was designed to encourage owners of highly erodible lands with eligible cropping histories to take those lands out of agricultural production in order to "conserve and improve the soil and water resources of farmlands." 16 U.S.C. §§ 3801, 3831–3832; *Strong v. Glickman*, 50 F.Supp.2d 1, 2 (D.D.C.1999). Under the program, the Commodity Credit Corporation ("CCC"), a wholly owned government corporation within the USDA, enters into ten year CRP contracts with farmers. 16 U.S.C. § 3831; 7 C.F.R. §§ 704.2(a)(7)—(a)(8), 713.1(a) (1987). Farmers must agree to "implement a plan ... for converting eligible lands normally devoted to the production of an agricultural commodity on the land ... to a less intensive use ...," 16 U.S.C. § 3832(a)(1), and in return for taking the land out of production, farmers receive annual payments based on the per-acre bid submitted for the contract. *See id.* at §§ 3833(2)(A), 3834(c)(2)(A); 7 C.F.R. § 704.2(a)(4). The program is administered by the USDA's Agricultural Stabilization and Conservation Service ("ASCS"). *See id.* at § 704.3(a).

The Beards own 152.2 acres of farmland located in Adams County, North Dakota, which have been in Mrs. Beard's family for generations (the "Property"). In 1988, the Beards entered into a contract with the CCC to enroll the Property in the CRP. By its terms, the Beards' 1988 CRP contract expired on September 30, 1998.

On November 13, 1997, in an effort to obtain a second ten year CRP contract consecutive with their first, the Beards submitted a bid to the Natural Resources Conservation Service ("NRCS") to enroll the Property in the 16th sign-up period for the 1998 CRP. Land offered for CRP enrollment is ranked based on a scoring system called the Environmental Benefits Index ("EBI") and contracts are awarded on a competitive basis according to their EBI ranking. The NRCS is responsible for scoring most of the EBI factors. The EBI for a property may be enhanced by the development of a conservation plan prior to submitting a bid for the CRP. Administrative Record, pp. 3–22 ("AR: 3–22").

In July, 1997, the Beards traveled to North Dakota from their home in California in order to timely develop a conservation plan for the Property, and took various steps toward achieving that goal. AR: 281. On July 11, 1997, the Beards met with Jack Russell of the NRCS, the District Conservationist for the district which includes the Property, to seek his support in the development of a conservation plan. At that time, Mr. Russell reviewed the Property on his maps and told the Beards that a conservation plan was unnecessary because the Property would easily qualify for a new CRP contract, citing its soil types and the fact that it was already planted in grass. Because of Mr. Russell's assurances and his unwillingness to assist them in the development of a conservation plan, the Beards did not pursue the matter further, either with the Fish and Wildlife Service, or in any other manner. AR: 209–214, 381–82, 458–89.

On October 14, 1997, Jack Russell sent a letter to the Beards informing them of the upcoming sign-up period for the 16th CRP. AR: 222. The sign-up period ran from October 14, 1997 through November 14, 1997. *Id.* As referenced above, the Beards submitted a Conservation Reserve Program Contract (CRP–1) seeking acceptance into the 16th CRP on November 13, 1997. AR: 503.

By written notice dated January 30, 1998, the Beards were informed that the Property was determined acceptable by

the NRCS for the 1998 CRP. AR: 631. The acceptance was revoked by letter dated March 30, 1998, from the Adams County Farm Service Agency Office ("ACFSA"). That letter informed the Beards that a "review of the ranking factor has revealed an error was made when the [EBI] points were calculated to determine eligibility" and that "[t]he corrected points from your offer(s) have been determined to be less than required" and "[t]herefore the offer(s) will not be accepted into the CRP Program." AR: 632.

On or about April 27, 1998, the Beards requested an administrative appeal of the March 30, 1998 denial of their 1998 CRP bid with the National Appeals Division of the USDA (the "NAD"). The Beards sought equitable relief in their appeal based on the fact that they were improperly discouraged from developing a conservation plan for the Property by Jack Russell's erroneous assurances that the Property was certain to be approved for the 1998 CRP, when in fact, under FSA policy directives, Mr. Russell was obligated to encourage the Beards in the development of a conservation plan. AR: 262. Under FSA Handbook 2–CRP (Rev.3) Amend. 6, Mr. Russell had a duty to "review EBI scoring parameters with the applicants and encourage the planting of cover types and conservation measures, if appropriate, that will provide higher environmental benefits before offers are scored." AR: 22, 363.

When the Beards attempted to file their appeal with the NAD, they were informed that, pursuant to USDA procedures, they must first appeal to the Farm Service Agency County Committee. AR: 187. The Beards' appeal and equitable claim was first submitted to the ACFSA Committee. AR: 345. After the County Committee conducted its review, it issued a letter dated June 18, 1998, stating: "The ranking factors were reviewed and checked. The factors did not generate an [EBI] high enough to be accepted into CRP." AR:235.

After the denial of the Beards' appeal by the County Committee, the NAD heard the appeal. The NAD assigned the Beards' appeal to Hearing Officer Iva Chavez under Case No. 98000732W for a hearing in accordance with 7 C.F.R. § 11.8, which occurred on August 12, 1998 in San Bernadino, California, and reconvened by telephone on August 19, 1998. Ms. Chavez issued her written Appeal Determination on September 18, 1998. AR: 239–246. In her Appeal Determination, Ms. Chavez found that the Beards had relied on misinformation provided to them by the NRCS and that this detrimentally impacted their CRP offer. She determined that it was error for the Agency to deny the Beards the 1998 CRP contract.

On October 13, 1998, the Farm Service Agency ("FSA") requested a NAD Director's Review of the Appeal Determination in accordance with 7 U.S.C. § 6998 and 7 C.F.R. § 11.9. AR: 719–21. The NAD Director, Norman G. Cooper, received the Beards' Review Response on October 29, 1998. AR: 684. On November 5, 1998, the NAD Director, issued his Director Review Determination, reversing the Appeal Determination (the "Director Review Determination"). AR: 654–57. The Director Review Determination was internally dated November 5, 1998, but not mailed until November 18, 1998.

## II. Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material" facts are

those which, under applicable substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party cannot create a "genuine" issue of "material" fact simply by making assertions in its legal memoranda. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.,* 690 F.2d 1235 (9th Cir.1982).

The moving party bears the initial burden of demonstrating the absence of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the party seeking summary judgment bears the burden of proof on a particular issue at trial, he must produce evidence showing that no reasonable trier of fact could find against him. *See Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986). But if the party seeking summary judgment does not bear the burden of proof at trial, he need only point out that his opponent's case lacks essential evidentiary support. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is particularly appropriate on review of administrative action. *McCall v. Andrus,* 628 F.2d 1185 (9th Cir. 1980). Here, the Beards bear the burden of proving their claim at trial.

### III. Standard of Review

The decision by the Director of the NAD is reviewed under the APA. *See Lane v. United States Department of Agriculture,* 120 F.3d 106, 108–09 (8th Cir.1997). The APA states that an agency's decision, including its action, findings and conclusions, should not be overturned unless it is unsupported by substantial evidence, or if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2); *United States*

*v. Snoring Relief Labs Inc.,* 210 F.3d 1081, 1085 (9th Cir.2000).

A decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise. *See Snoring Relief,* 210 F.3d at 1085. "Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." *Id.*

"Substantial evidence" in the APA means more than a mere scintilla but less than the weight of the evidence and refers to relevant evidence which reasonably supports a conclusion. *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir.1998) (substantial evidence is more than a mere scintilla, but less than a preponderance). If the evidence can reasonably support either affirming or reversing the Agency's decision here, a court may not substitute its judgment for that of the agency. *See Flaten v. Secretary of Health & Human Services,* 44 F.3d 1453, 1457 (9th Cir.1995).

Where review involves the interpretation of an agency's regulation, we must "defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the regulation." *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1356 (9th Cir.1994); *see also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) ("An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress.").

## IV. Discussion

### A. Timeliness of the Director Review Determination

The Agency request for review in this case was received by the Director on October 13, 1998. AR: 719. The NAD Director signed his Director Review Determination on November 5, 1998, and issued it to the parties by mail on November 18, 1998. By statute, once a Director Review has been requested:

"The Director shall conduct a review of the determination of the hearing officer using the case record, the record from the evidentiary hearing under section 6997 of this title, the request for review, and other such arguments or information as may be accepted by the Director. Based on such review, the Director shall issue a final determination notice that upholds, reverses, or modifies the determination of the hearing officer.... The Director shall complete the review and either issue a final determination or remand the determination not later than—
(1) 10 business days after receipt of the request for review, in the case of a request by the head of an agency for review".

7 U.S.C. § 6998(b). The Beards claim that because the Director Review Determination was issued more than 10 business days after receipt of the request for review, that is, after October 27, 1998, the issuance of the Director Review Determination after October 27, 1998, is an act in excess of statutory jurisdiction, authority or limitations and an act done without observance of procedure as required by law, and should be vacated by this court pursuant to the court's authority under 5 U.S.C. § 706. The Beards argue that such drastic action is required by the mandatory language of the statute, that the Director "shall" complete the review "not later" than 10 business days after receipt of the request for review.

Defendant responds that the delay can be explained in part because the Director did not receive the Beards' response until October 29, 1998 and in part because the case file presented for review was quite extensive. In addition, Defendant argues that the failure of the Director to timely render the Review Determination does not negate his authority to issue such a determination, and the penalty suggested by the Beards is not contemplated by the relevant statutes nor is it supported by any case law.

■ While the statutory language sets forth a deadline for the Director to issue a final determination, there is nothing in that language that specifies a consequence for noncompliance with the statutory deadlines. Absent such a specification, we should not impose an independent sanction, including that requested by the Beards. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 63–64, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."); *United States v. Montalvo–Murillo*, 495 U.S. 711, 717, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (holding that the word "shall" in bail hearing statute did not require release of federal criminal suspect where a detention hearing was not held "immediately" upon the suspect's first appearance before a judicial officer because there is "no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent"); *Brock v. Pierce County*, 476 U.S. 253, 260–62, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (holding that statute stating the Secretary of Labor "shall" determine within 120 days the truth of alle-

gations of misuse of funds did not bar the Secretary from acting after 120 days had passed and further noting that public interests should not be prejudiced by the negligence of the officers or agents to whose care they are confided).

The Beards argue that these cases are distinguishable as they involve different policy considerations, namely, that in each case, the party arguing that a deadline invalidated some action was seeking to avoid governmental enforcement action of some kind. The Beards argue that, in each of these cases, there was no indication that Congress intended such persons to benefit from the failure of the government to meet a deadline, whereas the deadline in this case was specifically intended for the benefit of appellants such as the Beards. We do not find this argument to be persuasive. It can be said that the entire appeals process available under the NAD was created for the benefit of appellants such as the Beards, and if the NAD Director had been a few days late in issuing a Director Review Determination based on appeal from an appellant rather than the Agency, the Beards certainly would not be arguing for such a drastic penalty. Further, as will be explicated further below, the extra time taken to review the Beards' case was for their benefit, to more fully consider the file as well as their response, which was received by the Director after the deadline for the issuance of the Director Review Determination.

In addition, the Beards have cited no authority in support of their argument. In fact, the Supreme Court's discussion in *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), runs counter to their proposition. In *Brock*, a county, as recipient of certain government funds, sought review of the Secretary of Labor's decision requiring repayment of funds unlawfully expended. The Court

held that despite statutory language that the Secretary "shall" issue a final determination as to the misuse of funds within 120 days after audit or receipt of complaint of misuse, the Secretary does not lose power to recover misused funds after 120 days. *Id.* In support of its conclusion, the Court expressed its reluctance to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. *Id.* at 260, 106 S.Ct. 1834. The Court also noted that the protection of the public fisc is a matter of interest to every citizen. *Id.* at 262, 106 S.Ct. 1834. Thus, the NAD provisions could be construed as not only serving to benefit the Beards, but serving the public in general, as they provide a mechanism by which to ensure the USDA's allocation of funds is consistent with the goals of the specific programs set up under the Agency's statutes and regulations. It is in the best interest of the public that only that land which qualifies for the CRP actually be included in that program. Further, the Court held that the mere use of the word "shall" in the relevant statute, standing alone, was not enough to remove the Secretary's power to act after 120 days. *Id.*

Beyond the authority found in case law, an examination of the statutes and regulations governing the NAD and the fact that their legislative history contemplated a situation such as the one in the present case demonstrates that the Director Review Determination should not be invalidated for its untimeliness. As mentioned above, nothing in the statutory language specifies a consequence for noncompliance with the statutory deadlines. Further, the USDA specifically set forth a preamble to 7 C.F.R. § 11.9, the NAD provision that sets forth the regulations that govern Director review of Hearing Officer determinations:

> [T]he deadlines set by the Act for the Director to issue a final determination

or to remand to the Hearing Officer may be unrealistic at any given time because of the caseload or the complexities of a particular appeal. Although the USDA believes the failure to meet these deadlines does not deprive the Director of jurisdiction to reach a determination or issue a remand order, it fully intends to follow such deadlines to the extent possible in order to deliver fairly considered determinations of the Director that will withstand judicial review. Hastily rendered determinations that fail to develop an adequate decision for judicial review do not benefit either USDA or appellants. Therefore, while USDA has added no provision affirmatively authorizing the Director to extend the period for issuance of determinations, USDA recognizes that it may be necessary for the Director to do so in individual cases in order to facilitate a fair and equitable resolution of that appeal. Equitable, in this sense, refers to equal participation in and consideration of parties' submissions in the Director review process. Rules and Regulations, Department of Agriculture, 60 Fed.Reg. 62798, 67305 (December 29, 1995).

Since the Director did not even receive the Beards' Review Response until after the 10 day deadline, the case file is somewhat extensive and the Director Review Determination was issued one week after receipt of the Beards' Response (though apparently not mailed out until two weeks thereafter), such a brief delay, particularly in light of the legislative history, should not result in an invalidation of the Director Review Determination.

### B. The Director Review Determination Is Ambiguous as to the Request for Equitable Relief

The Beards contend that the Director Review Determination violates the APA, 5 U.S.C. § 706(2)(a), in that it is arbitrary and capricious, an abuse of discretion or

otherwise not in accordance of the law. The Beards' primary contention is that in reversing the Appeal Determination of Hearing Officer Iva Chavez, NAD Director Norman G. Cooper failed to consider their equitable claims. The Beards argue that the Evidence section of the Director Review Determination fails to recite any evidence bearing on their equitable claim. AR: 655. Essentially, the Beards are arguing that the Director Review Determination is arbitrary and capricious because it fails to recognize that there was an adverse decision in this case and offers an explanation for its decision which runs counter to the evidence of record.

Defendant argues that the recital of evidence does indicate that the Beards' equitable claims were considered, and in reversing the Hearing Officer's Appeal Determination, the Director declined to grant equitable relief to the Beards. Defendant further contends that the Director's conclusion was reasonable because there was no prior adverse decision as to the equitable relief. The County Committee could not deny the Beards' claims for equitable relief, because they did not have the authority to grant them. The County Committee did not make a recommendation to the Agency that equitable relief be granted. Defendant argues that the Agency did consider the issue in its Request for Director Review: "Issues: .... Were Appellants misinformed with respect to the opportunity to increase the EBI to heighten the likelihood that their offer would be accepted, and, if so, is relief warranted?" AR: 672–73.

Under Defendant's interpretation of the relevant statutes, there was no denial of equitable relief in this case by the Farm Service Agency, and there was no "adverse decision" by the agency, as defined by 7 U.S.C. § 6991 (an "adverse decision" in-

cludes a "denial of equitable relief by an agency").

Here, the agency at issue is the FSA. 7 U.S.C. § 6991. The FSA is administered by its Administrator, Associate Administrator and Deputy Administrator. *See* 7 C.F.R. §§ 718.1, 718.8, 1410. The FSA also consists of state committees and county committees (supervised by the state committees) which administer the programs of the FSA. *See* 7 C.F.R. §§ 718.1, 1410.1.

Under Defendant's interpretation of the relevant statutes and regulations, in the FSA, only the Administrators are authorized to grant equitable relief. *See* 7 U.S.C. §§ 1339a, 6998(d) and 7 C.F.R. §§ 718.8, 11.9.[1] Therefore, under Defendant's interpretation, a county committee is not authorized to grant equitable relief, and thus cannot deny equitable relief. A county committee may only issue a recommendation that an Administrator grant eq-

uitable relief if it finds such relief warranted in a particular case. If the county committee presents that recommendation to an Administrator and the Administrator denies equitable relief, that would constitute an "adverse decision" pursuant to 7 C.F.R. § 718.1.

When the Beards received their adverse decision from the County Committee, they also received a sheet explaining their further appeal options. *See* AR: 217 ("[Y]ou may elect any of the options in the following sequence: (1) Reconsideration by the County Committee, (2) Request mediation, (3) Appeal to the State Committee and (4) Appeal to the National Appeals Division (NAD). You may elect these options in the indicated sequence. You may select any of the first three options, or you may skip any of the first three options and select a later choice, or skip all three and appeal direct to NAD."). The Beards elected to skip the first three options and

1.  "[T]o the extent the Secretary of Agriculture considers it desirable in order to provide fair and equitable treatment, the Secretary may make price support or other payments available to farmers who have, in attempting to comply with the requirements of any price support or other program administered by the Secretary or any other requirements in law affecting such person's eligibility under such programs, taken actions in good faith in reliance on the action or advice of an authorized representative of the Secretary. The Secretary may provide such price support or other payments to the extent the Secretary determines such farmer has been injured by such good faith reliance and may require such farmer to take necessary actions designed to remedy any failure to comply with such programs. . . ." 7 U.S.C. § 1339a.
    "Subject to regulations issued by the Secretary, the Director shall have the authority to grant equitable relief under this section in the same manner and to the same extent as such authority is provided to the Secretary under section 1339a of this title and other laws. Notwithstanding the administrative finality of a final determination of an appeal by the Division, the Secretary shall have the authority to grant equitable or other types of relief to

the appellant after an administratively final determination is issued by the Division." 7 U.S.C. § 6998(d).

"Notwithstanding any other provision of the law, performance rendered in good faith based upon action of, or information provided by, any authorized representative of a County or State Farm Service Agency Committee, may be accepted by the Administrator, FSA (Executive Vice President, CCC), the Associate Administrator, FSA (Vice President, CCC), or the Deputy Administrator for Farm Programs, FSA (Vice President, CCC), as meeting the requirements of the applicable program, and benefits may be extended or payments may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment." 7 C.F.R. § 718.8.

"Director review of determinations of Hearing Officers. (e) Equitable relief. In reaching a decision on an appeal, the Director shall have the authority to grant equitable relief under this part in the same manner and to the same extent as such authority is provided an agency under applicable laws and regulations." 7 C.F.R. § 11.9.

pursue their appeal before the NAD. By foregoing their appeal to the State Committee, the Beards chose to pursue all of their claims, including those for equitable relief, before the NAD. Thus, the Agency never formally denied the Beards' claim for equitable relief, because the claim was never before a party in the Agency that had the authority to either grant or deny such equitable relief. Therefore, the Beards' claim for equitable relief was limited to a request for equitable relief from the Director of the NAD.

■ As referenced in 7 C.F.R. § 11.9, the Director specifically has the authority to grant equitable relief, but Hearing Officers are not granted such similar authority. Neither the statute authorizing Division Hearings nor the implementing regulation authorizes such authority to the Hearing Officer. *See* 7 U.S.C. § 6997; 7 C.F.R. § 11.8. Thus, without an Agency grant or denial of the Beards' equitable relief claim, the Hearing Officer could only affirm, reverse or modify the original denial of the tract into the CRP and make a recommendation as to whether the Director should, himself, grant equitable relief. Because the Hearing Officer lacked the authority to grant equitable relief, her Appeal Determination can fairly be characterized as arbitrary and capricious, an abuse of discretion, and not in accordance with the law. As such, the NAD Director acted reasonably in reversing that decision.

The Beards have conceded that the Hearing Officer cannot grant equitable relief, but they argue that she had the authority to reverse a denial of equitable relief by the County Committee. This scenario was contemplated by the USDA and addressed in the preamble to section 11.9:

> With respect to this section, one commenter also suggested that if a Hearing Officer does not have the power to reverse a denial of equitable relief (in ef-

fect, to award equitable relief) then this part should provide a shortcut past the Hearing Officer to the Director. The position of USDA is that the statute provides the Director with authority in appropriate cases to award equitable relief, and that no different procedural steps are required to implement that authority. However, a record developed by a Hearing Officer is necessary for the Director to determine whether such relief is appropriate.

Rules and Regulations, Department of Agriculture, 60 Fed.Reg. 67298, 67305–06 (December 29, 1995). Thus, procedurally, a Hearing Officer who finds equitable relief to be warranted may create a record and recommend the granting of such equitable relief to the NAD Director. Therefore, the NAD Director acted reasonably in reversing the Hearing Officer's grant of equitable relief, because she did not have the authority to take that action.

In their Reply, the Beards argue that if we accept Defendant's interpretation, the Agency can completely undermine an appellant's right to appeal a denial of equitable relief by simply failing to recommend such relief to the Administrator. We disagree. There can only be a denial of equitable relief if the party in question has the authority to actually grant equitable relief. Under the construction of the relevant statutes and regulations, only certain Administrators within the FSA (the head Administrator, Associate Administrator and Deputy Administrator) and the Director of the NAD, as well as, of course, the Secretary of Agriculture, have the authority to grant equitable relief. Thus there could be no denial of equitable relief appealed to the NAD Director in cases where, as here, the appellants chose to bypass the intermediate options of Agency review before appealing directly to the NAD. Therefore, accepting Defendant's interpretation does not undermine an appel-

lant's right to appeal a denial of equitable relief.

The Beards further argue that a "much more reasonable interpretation of the statute" (Reply at 4) would be to hold the failure of the County Committee to recommend equitable relief to the Administrator to be a denial of equitable relief. First, while the Hearing Officer technically "hears and determines appeals of adverse decisions" (7 U.S.C. § 6991(7)) and an "adverse decision" includes "a denial of equitable relief" (7 U.S.C. § 6991(1)), the preamble to 7 C.F.R. § 11.9 quoted above clearly indicates that a Hearing Officer may not unilaterally grant equitable relief, but rather, may create a record that recommends that the NAD Director grant such relief. Thus, the Beards' argument fails for that reason. More significantly, however, the Beards' have argued that their interpretation is a "much more reasonable interpretation." We are reviewing this case on an abuse of discretion standard of review. Thus, so long as the Agency's interpretation was, itself, not "plainly erroneous or inconsistent with the regulation", it is irrelevant whether another interpretation is *more* reasonable. *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1356 (9th Cir.1994). And, as outlined above, the NAD Director's interpretation of the relevant statutes and regulations is not so unreasonable or outlandish as to constitute plain error.

■ The Beards have also contended that the NAD Director's Review Determination was arbitrary and capricious because it failed to consider their equitable claim. Defendant argues that the NAD Director did consider the Beards' claim for equitable relief and did not grant it for the reasons set forth in the Review Determination. As the Beards acknowledge, the Agency's Review Request included the following issue: "Were Appellants misinformed with respect to the opportunity to increase the EBI to heighten the likelihood that their offer would be accepted, and, if so, is relief warranted?" AR: 672–73.

In his Review Determination, the NAD Director considered "the case record, including information submitted on review, the request for review, the laws applicable to the matter at issue, and applicable regulations as defined at 7 U.S.C. § 6998(c)." AR: 654. The NAD Director's finding that most directly addresses the Beards' request for equitable relief is his conclusion that the Hearing Officer's determination that equitable relief was warranted was not consistent with the "laws and regulations of the Agency and with the generally applicable interpretations of such laws and regulations," and that "[t]here was no adverse decision by the Agency denying relief in this case. Therefore, the Hearing Officer's determination as to the issue of Agency misinformation affecting the Appellant's CRP offer is inapposite." AR: 656.

It is clear from the Issues presented in the Agency Review Request and the Hearing Officer's Appeal Determination that the claims that the Beards had made with regard to Mr. Russell's misleading statements and the information they lacked in preparing their CRP bid were squarely before the Director in his Review. Moreover, inasmuch as the Hearing Officer's determination, albeit erroneous, can be fairly read as her recommendation to the Director for equitable relief, the Director was obliged to consider and decide the equitable claim on the merits.

The parties dispute whether the language of the Director's determination shows that a decision was made on the merits. To us, the language of the decision is unclear as to whether the Director actually decided the equitable claim on the merits. The language employed by the Director is clearly susceptible to the inter-

pretation that no decision was made on the merits of the claim, but only that the Hearing Officer's determination of equitable relief was improper because, given the procedural posture of the appeal, the facts underlying the claim for equitable relief were not pertinent. In *Harrod v. Glickman*, 206 F.3d 783 (8th Cir.2000), the Eighth Circuit upheld, as sufficient, the Director's somewhat cryptic statement that "the facts of the case do not warrant equitable relief." *Id.* at 793. But here the Director has done even less than that. The decision does not make clear whether he is denying equitable relief on the merits or whether he did not consider the facts underlying the claim for equitable relief because he found them procedurally "inapposite."

Because it is unclear whether the Director actually considered and decided the equitable claim on the merits, we cannot at this point determine whether the Director acted arbitrarily and capriciously by entirely failing to consider an important aspect of the case. Therefore, we hereby REMAND this case to the NAD Director in order for him to make it clear whether he considered and determined the appropriateness of equitable relief on the merits.[2]

## V. Disposition

The Director Review Determination is hereby **REMANDED** to the NAD Director for clarification as to whether he considered the appropriateness of equitable relief in this case on the merits. If he did, he shall so state and set forth his reasons for his determination. If Plaintiffs are not satisfied with the Director's determination, they may file another action in this court challenging such determination. Such other action, if any, shall be marked as related to this action so that it can be low-numbered to this court.

IT IS SO ORDERED.

---

**2.** The Beards argue that the administrative record is without substantial evidence to support the conclusion of the Director Review Determination. Since we are remanding the Director Review Determination for clarifica-

tion as to whether the NAD Director considered the appropriateness of equitable relief on the merits, we need not consider the sufficiency of the evidence relied upon by the NAD Director until such clarification is made.