UNITED STATES of America,
Plaintiff–Counter–Defendant–
Appellee,

v.

John BOWEN, an individual dba
Asepsis, Defendant–Counter–
Claimant–Appellant.

No. 98–56126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1999.

Decided April 2, 1999.

Earnest J. Franceschi, Jr., Los Angeles, California, for the defendant-counter-claimant-appellant.

Deborah M. Autor, United States Department of Justice, Washington, D.C., for the plaintiff-counter-defendant-appellee.

Before: BROWNING, WIGGINS, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Defendant repairs the SteriSafe Handpiece Sterilizer (SteriSafe), which is used to sterilize dental handpieces. He also manufactures the SteriDot High Purity Water Ampule (SteriDot), an accessory used with SteriSafe. The government brought this action, claiming that both products are adulterated in violation of the Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 301 *et seq.,* and that SteriDot also is misbranded in violation of the FFDCA. The district court agreed and enjoined defendant from introducing into, or receiving from, interstate commerce any SteriSafes or SteriDots. The district court also authorized the Food and Drug Administration (FDA) to order defendant to recall all such products that he had produced or repaired.

Defendant appeals, arguing that: (1) the district court erred by holding that these products are "devices" within the meaning of the FFDCA, (2) the FDA acted arbitrarily and capriciously by classifying SteriSafe as a class III device subject to pre-market approval, (3) the district court abused its discretion by failing to dismiss the action because of the government's failure to join a purportedly indispensable party, and (4) the district court abused its discretion by authorizing the recall of these products. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant served as a member of the board of directors and as president of Sterilization Systems, Inc. (Sterilization Systems). In 1993, Sterilization Systems began selling SteriSafe, a sterilizer for dental handpieces. Sterilization Systems did not seek the FDA's approval before marketing that product.

After a competitor of Sterilization Systems complained, the FDA informed Sterilization Systems that it could not market SteriSafe without first obtaining the FDA's approval. Thereafter, Sterilization Systems sought to have SteriSafe exempted from the FFDCA's pre-market approval requirements, arguing that SteriSafe was the substantial equivalent of a preexisting, legally marketed device. The FDA rejected that request on January 30, 1996. Despite repeated warnings from the FDA, Sterilization Systems continued to sell SteriSafe.

In December 1996, Sterilization Systems filed for Chapter 11 bankruptcy protection. Thereafter, defendant left Sterilization Systems to start an entity called Asepsis. At Asepsis, defendant continued to repair existing SteriSafes. He also developed and marketed SteriDot, an accessory to SteriSafe that "facilitates sterilization." Defendant did not obtain approval from the FDA to sell SteriDot.

On January 8, 1998, the government filed this action, seeking to prevent defendant from producing any more SteriDots and from repairing any more SteriSafes. Thereafter, both parties filed motions for summary judgment. The district court granted the government's motion for summary judgment. As part of its order, the district court enjoined defendant from introducing into, or receiving from, interstate commerce any SteriDots or SteriSafes. The district court also authorized the FDA to order defendant to recall all such products that he had produced or repaired.

## STERISAFE AND STERIDOT ARE DEVICES

A. *Standard of Review*

■ Defendant argues that the district court erred by concluding that SteriSafe and SteriDot are "devices" as defined in 21 U.S.C. § 321(h). We review the district court's interpretation of law *de novo*. *See United States v. Iverson*, 162 F.3d 1015, 1019 (9th Cir.1998).

B. *Analysis*

"When interpreting a statute, this court looks first to the words that Congress used." *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1099 (9th Cir.1998). "Rather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine Congressional intent." *Id.*

The FFDCA applies only to a device, which is defined as

> *an instrument*, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, *which is—*
>
> . . . .
>
> (2) *intended for use in the* diagnosis of disease or other conditions, or in the cure, *mitigation*, treatment, *or*

*prevention of disease, in man* or other animals[.]

21 U.S.C. § 321(h)(2) (emphasis added).

■ Under the plain wording of the statute, an instrument that sterilizes dental handpieces satisfies the "device" requirement. Specifically, "[t]he *sterilizing* of a medium implies complete destruction of all germs in it." *Webster's New Int'l Dictionary* 2472 (unabridged 2d ed.1954) (emphasis in original). A germ is "any microorganism, esp., any of the pathogenic bacteria; a microbe; a disease germ." *Id.* at 1051. Thus, a sterilization instrument's purpose is to destroy disease-causing germs. Because SteriSafe sterilizes dental handpieces, it is "an instrument . . . which is . . . intended for use in the . . . mitigation . . . or prevention of disease[ ] in man." 21 U.S.C. § 321(h)(2).

■ Additionally, the term "device" includes any accessory to an instrument intended for use in the prevention of disease. *See* 21 U.S.C. § 321(h) (device means "an instrument, . . . including any component, part, or *accessory*.") (emphasis added). Defendant has admitted that SteriDot is an accessory of SteriSafe. Accordingly, SteriDot also is a device.

Our reading of the statute comports with relevant regulatory interpretations, as well as with the words of the statute itself. The FFDCA charges the Secretary of Health and Human Services with the responsibility to enforce the Act, *see* 21 U.S.C. § 371(a), a responsibility that the Secretary has delegated, in turn, to the FDA, *see* 21 C.F.R. § 5.10. Pursuant to that grant of authority, the FDA has a longstanding policy that medical and dental sterilization instruments (and their accessories) are "devices." This longstanding policy has manifested itself in two ways.

First, the FDA has adopted regulations classifying many types of sterilization instruments as devices. *See* 21 C.F.R. § 880.6850 (sterilization wrap); 21 C.F.R. § 880.6860 (ethylene oxide gas sterilizer);

21 C.F.R. § 880.6870 (dry-heat sterilizer); 21 C.F.R. § 880.6880 (steam sterilizer or autoclave). Most importantly here, the FDA has adopted regulations classifying certain dental sterilizers as devices:

A boiling water sterilizer is an AC-powered device that consists of a container for boiling water. The device is intended to sterilize dental and surgical instruments by submersion in the boiling water in the container.

21 C.F.R. § 872.6710 (boiling water sterilizer).

An endodontic dry heat sterilizer is a device intended to sterilize endodontic and other dental instruments by the application of dry heat. The heat is supplied through glass beads which have been heated by electricity.

21 C.F.R. § 872.6730 (endodontic dry heat sterilizer).

■ Second, the FDA has an internal policy classifying other medical and dental sterilization instruments as devices. An administrative agency's internal interpretation of a statute that it administers is entitled to deference so long as it is "sufficiently rational." *See Young v. Community Nutrition Inst.*, 476 U.S. 974, 981, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986) ("We find the FDA's [longstanding internal] interpretation of § 346 to be sufficiently rational to preclude a court from substituting its judgment for that of the FDA."). As noted, the wording of the Act demonstrates that dental sterilization instruments fall clearly under the definition of "devices." The FDA's regulations have classified similar sterilization instruments as "devices." In the circumstances, the FDA's internal determination that other sterilization instruments also are devices is "sufficiently rational."

Our interpretation also is supported by what little precedent there is in this area. *See United States v. Various Articles of Device Identified in Attachment "A,"* 814 F.Supp. 31, 31 (E.D.Tenn.1992) ("[T]he Court finds that Sporicidin's disinfecting

products are devices within the meaning of the FFDCA, 21 U.S.C. § 321(h) because they are intended for the mitigation and prevention of disease in man....."); *United States v. 22 Rectangular or Cylindrical Finished Devices,* 714 F.Supp. 1159, 1166 (D.Utah 1989) ("[T]he FDA's inclusion of surgical instrument sterilizers within its device jurisdiction is rational....").

In summary, the wording of the statute, the FDA's regulations, the FDA's internal interpretation, and precedent all demonstrate that a sterilizer for dental handpieces is a "device" as that term is defined in 21 U.S.C. § 321(h). That being so, both SteriSafe and its accessory SteriDot are within the jurisdiction of the FFDCA.

Defendant nevertheless posits three reasons why SteriSafe and SteriDot are not devices. First, defendant argues that the government failed to prove that dental handpieces transmit disease and, thus, that SteriSafe actually prevents disease. Such proof is not required.

■ Congress had two purposes in enacting the FFDCA: (1) to regulate products that actually prevent disease, and (2) to regulate products that falsely claim that they prevent disease. Because of those dual concerns, the only question under the FFDCA is whether the *intended use* of the product is to prevent disease, not whether the product *actually* prevents disease. *See United States v. Article ... Consisting of 216 Cartoned Bottles,* 409 F.2d 734, 739 (2d Cir.1969) ("Regardless of the actual physical effect of a product, it will be deemed a drug for purposes of the Act where the labeling and promotional claims show intended uses that bring it within the drug definition.") (footnote omitted); *Finished Devices,* 714 F.Supp. at 1165 ("[W]hether a product is a device turns solely on the product's intended use."). Accordingly, this court has applied the FFDCA to instruments that do not actually prevent disease. *See Church of Scientology of Cal. v. Richardson,* 437 F.2d 214, 217 (9th Cir.1971) (holding that a Scientology "E-meter" was a device, even though

the plaintiff admitted that "the devices are ineffective for any medical therapeutic purpose"); *Drown .v. United States,* 198 F.2d 999, 1002–03, 1006 (9th Cir.1952) (holding that a machine that allegedly eliminated lumps from women's breasts was governed by the FFDCA, even though "expert witnesses expressed the unanimous belief that appellant's instruments are useless for diagnosis or treatment of any human ailment").

Defendant next argues that the SteriSafe is not a device, because the FDA does not require dentists to sterilize their handpieces. Defendant again misunderstands the scope of the FFDCA. Because SteriSafe satisfies the intended-use requirement, it is a "device" whether or not the FDA requires sterilization. *See Drown,* 198 F.2d at 1006 (holding that a machine that allegedly eliminated lumps from women's breasts was governed by the FFDCA, even though the FDA did not require the use of such a machine).

■ Finally, defendant argues that SteriDot cannot be a device, because its label did not state its intended use. Defendant relies for this argument on a recent amendment to the FFDCA:

> Any determination by the Secretary of the intended use of a device shall be based upon the proposed labeling submitted in a report for the device under section 360(k) of this title.

21 U.S.C. § 360c(i)(E)(i). Read out of context, defendant's argument is plausible. However, as noted, statutory meaning depends on context.

The provision that defendant cites is part of a subsection dealing only with determinations by the FDA of *substantial equivalency.* *See* 21 U.S.C. § 360c(i). Read in context, the provision plainly applies only to such determinations.

Defendant suggests that Congress could not have intended to limit the scope of only one type of "intended use" determination. We disagree for two reasons. First, the

"intended use" inquiry under the "device" requirement focuses on whether the intended use of the product is *to prevent disease*. *See* 21 U.S.C. § 321(h). The "intended use" inquiry for determining "substantial equivalency" focuses instead on whether the intended use of the product is *similar to* that of a preexisting, legally marketed device. *See* 21 U.S.C. § 360c(f)(1). Because the questions are so different, Congress' choice to limit one does not mean that Congress necessarily sought to limit the other.

Second, a substantial equivalency determination is conducted for the benefit of manufacturers, inasmuch as it allows manufacturers to escape the FDA's onerous pre-market approval requirements. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("The § 510(k) [substantial equivalency] notification process is by no means comparable to the PMA [pre-market approval] process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is complete in an average of only 20 hours."). By enacting 21 U.S.C. § 360c(i)(E)(i), Congress limited the ability of manufacturers to claim that benefit; it did not simultaneously limit the protective jurisdictional reach of the FFDCA.

We therefore conclude that the recent amendment altered the "intended use" inquiry only for substantial equivalency determinations. In other circumstances, courts can continue to look beyond the product's label. *See* 21 C.F.R. § 801.4 (Intended use "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives.").

## STERISAFE WAS PROPERLY CLASSIFIED AS A CLASS III DEVICE

### A. *Standard of Review*

■ A device is "adulterated" in violation of the FFDCA if: (1) it is a class III

device, and (2) the manufacturer did not obtain pre-market approval (or an exemption) for the device. *See* 21 U.S.C. § 351(f). Defendant argues that the FDA improperly determined that SteriSafe was a class III device. We review the FDA's classification to determine whether it was arbitrary or capricious. *See Richardson*, 437 F.2d at 217. *See also Ethicon, Inc. v. FDA*, 762 F.Supp. 382, 386 (D.D.C.1991) ("Congress gave FDA sweeping discretion in determining the classification of devices and therefore in judging the safety and effectiveness of medical devices.").

### B. *Analysis*

■ Defendant's only argument is that the FDA's determination, in its health hazard evaluation, that SteriSafe was a "low-risk" device precluded the FDA from determining that SteriSafe was a class III device. Defendant's argument misconstrues the statutory scheme.

The procedure for classifying devices initially places *all* new devices in class III. *See* 21 U.S.C. § 360c(f)(1) ("Any device intended for human use which was not introduced or delivered for introduction into interstate commerce before May 28, 1976, is classified in class III.... A device classified in class III under this paragraph shall be classified in that class until the effective date of an order of the Secretary under paragraph (2) or (3) classifying the device in class I or II.").[1] *See also United States v. Undetermined Number of Unlabeled Cases*, 21 F.3d 1026, 1029 (10th Cir.1994) (identifying this procedure). Thereafter, a manufacturer may request that the FDA reclassify the device. *See* 21 U.S.C. § 360c(f)(2) & (3). Reclassification is based on knowledge of the safety of the product and the risk of harm associated with it.

Defendant did not request reclassification before he introduced SteriSafe into

1. There are two exceptions, neither of which is relevant here. *See id.*

interstate commerce.[2] Therefore, even if the FDA had sufficient knowledge of Steri-Safe to determine that it was "safe," Steri-Safe nevertheless would remain a class III device by operation of law. That being so, the FDA's classification was not arbitrary or capricious.

## JOINDER OF STERILIZATION SYSTEMS WAS NOT REQUIRED

### A. *Standard of Review*

■ Defendant next argues that the district court improperly refused to dismiss the action on the ground that the government failed to join Sterilization Systems, the manufacturer of SteriSafe. Generally, we review a district court's decision regarding joinder for abuse of discretion. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996). However, we review legal conclusions underlying that decision *de novo*. *See id.* ("[I]f the district court's decision that an absent party's interest would be impaired involves a legal determination, we review de novo that determination.").

### B. *Analysis*

Federal Rule of Civil Procedure 19 provides a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party. First, the court must determine whether the absent party is "necessary":

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already

parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). If the absent party is "necessary," the court must determine whether joinder is "feasible." *See* Fed.R.Civ.P. 19(a) & (b). Finally, if joinder is not "feasible," the court must decide whether the absent party is "indispensable," *i.e.*, whether in "equity and good conscience" the action can continue without the party. *See* Fed.R.Civ.P. 19(b) (listing factors for courts to consider).

The district court held that Sterilization Systems failed the first requirement, because it was not a "necessary" party. As is evident, Fed.R.Civ.P. 19(a) provides that a party is "necessary" in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action. *See Yellowstone County v. Pease*, 96 F.3d 1169, 1172 (9th Cir.1996) (citing those two circumstances).

The district court first held that it could afford complete relief without Sterilization Systems, because the government sought to enjoin only defendant's actions. Defendant does not challenge that holding on appeal.

The district court next held that defendant could not assert that Sterilization Systems has a legally protected interested in the action, because Sterilization Systems

---

**2.** After the district court entered its order, defendant sought reclassification of SteriSafe. Defendant thus argues that we should delay deciding this appeal until the FDA renders its decision. We decline the invitation. The FFDCA requires a producer of a class III device to obtain pre-market approval *before* introducing its product into interstate commerce. Defendant violated that requirement even if he later obtains reclassification. Therefore, reclassification would not affect those past violations of the Act; at most, if defendant later obtains reclassification, he can ask the district court to lift its injunction.

itself has never *claimed* that it has such an interest. Defendant contends that a claim of interest is not required. Our precedent declares otherwise.

█ Joinder is "contingent … upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983) (emphasis added). Here, Sterilization Systems was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was "unnecessary." *See id.* at 1043–44 (holding that the absent party— the government—was not "necessary" within the meaning of Rule 19, in part because the government "has never asserted a formal interest in either the subject matter of this action or the action itself. On the contrary, the record reflects that the [g]overnment has meticulously observed a neutral and disinterested posture…."). *See also Thomas, Head and Greisen Employees Trust v. Buster,* 95 F.3d 1449, 1460 n. 18 (9th Cir.1996) (holding that "Westwood was not an indispensable party to the proceedings," because "Westwood had not claimed an interest in Buster's limited partnership interest at the time of the default judgment"); *United States ex rel. Morongo Band of Mission Indians v. Rose,* 34 F.3d 901, 908 (9th Cir.1994) (holding that, because the absent party "did not feel that it was necessarily in his interest to remain a party in this action," "it is inappropriate for one defendant to attempt to champion [the] absent party's interests").

## DEFENDANT FAILED TO PRESERVE HIS ARGUMENT ABOUT THE SCOPE OF THE RELIEF GRANTED

█ The district court authorized the FDA to order defendant to recall all Steri-Safes that he had repaired and all Steri-Dots that he had produced. On appeal, defendant argues that the district court abused its discretion in fashioning that relief. *See Erickson v. United States ex rel. Dep't of Health & Human Servs.,* 67 F.3d 858, 861 (9th Cir.1995) (stating the standard of review). However, defendant did not challenge the government's request for a recall before the district court entered its order. Instead, defendant challenged the recall order only after the fact, in a motion to stay the order pending appeal.

In *Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 515 (9th Cir.1992), this court said: "[T]he argument must be raised sufficiently for the trial court to rule on it. This principle accords to the district court the opportunity to reconsider its rulings and correct its errors." (Citation and internal quotation marks omitted.) Because defendant gave the district court no opportunity to reach the merits of the question that he now asks us to reach, he did not preserve the challenge. He thereby waived any such challenge before this court. *See Sanchez,* 147 F.3d at 1100 ("[A] party's failure to raise an issue … constitutes a waiver of that issue.").

AFFIRMED.