**UNITED STATES of America,**
Plaintiff-counter-defendant-
Appellee,

v.

**SNORING RELIEF LABS INC.,**
Defendant-counter-claimant-
Appellant.

No. 99–15190.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2000

Filed May 2, 2000

Brian J. Donato, Hyman, Phelps, & McNamara, Irvine, California, for the defendant-counter-claimant-appellant.

Deborah M. Autor, United States Department of Justice, Office of Consumer Litigation, Washington, D.C., for the plaintiff-counter-defendant-appellee.

Before: HUG, Chief Judge, D.W. NELSON, and McKEOWN, Circuit Judges.

D.W. NELSON, Circuit Judge:

Snoring Relief manufactures SnorBan, an anti-snoring mouthpiece that it seeks to sell without a prescription. The government brought this *in rem* seizure action, claiming that SnorBan cannot be sold without a prescription because it is a Class III adulterated device under the Federal Food, Drug, and Cosmetic Act (FDC Act), 21 U.S.C. § 351(f)(1)(B); SnorBan lacked pre-market approval; and it was "misbranded" under 21 U.S.C. § 352(f)(1). The district court granted the Food and Drug Administration's (FDA's) summary judgment motion and denied Snoring Relief's cross-motion for summary judgment. Snoring Relief appeals, arguing that the district court erred in: (1) applying the arbitrary and capricious standard; (2) finding that FDA was not arbitrary and capricious in refusing to exempt SnorBan from the pre-market notification requirement and in not clearing SnorBan for over-the-counter use; and (3) not remanding this case to FDA to determine if a specific warning label that allows over-the-counter marketing of other anti-snoring products would have cured SnorBan's "apnea concern." We affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1976, Congress amended the FDC Act in order to establish three classifications of medical devices: Class I, Class II, and Class III. All new devices are presumed to be in Class III. *See* 21 U.S.C. § 360c(f)(1); *United States v. Bowen,* 172 F.3d 682, 687 (9th Cir.1999). Class III devices, the most strictly regulated, require pre-market approval before they are sold. *See* 21 U.S.C. § 360e. "A device is 'adulterated' in violation of the [FDC Act] if: (1) it is a class III device, and (2) the manufacturer did not obtain pre-market

approval (or an exemption) for the device." *Bowen*, 172 F.3d at 687.

There are two principal ways to get an exemption from pre-market approval: (1) The device was introduced before May 28, 1976, *see* § 360c(f)(1); or (2) The device's manufacturer submits a "pre-market notification" to FDA pursuant to 21 U.S.C. § 360(k),[1] and FDA decides that the device "is substantially equivalent to another device within such type." § 360c(f)(1)(A)(ii). The FDC Act defines substantially equivalent to mean "that the device has the same intended use as the predicate device" and that it

(i) has the same technological characteristics as the predicate device,

or

(ii)(I) has different technological characteristics and the information submitted that the device is substantially equivalent to the predicate device contains information, including appropriate clinical or scientific data if deemed necessary by the Secretary or a person accredited under section 360m of the title, that demonstrates that the device is as safe and effective as a legally marketed device, and (II) *does not raise different questions of safety and effectiveness than the predicate device.*

21 U.S.C. § 360c(i)(1)(A) (emphasis added). If FDA decides that a device is or is not substantially equivalent, it can issue an order or request additional information. *See* 21 C.F.R. § 807.100.

Snoring Relief tried to become the first company to market a self-fitting, anti-snoring mouthpiece without a prescription. SnorBan requires the patient to self-fit the device by placing it in boiling water, advancing her jaw forward, and inserting the device. The patient determines how far forward to advance her jaw, and then takes a dental impression. Advancing the jaw forward apparently improves the patient's airway and prevents snoring.

Snoring Relief did not seek pre-market approval or notification for SnorBan from FDA. On September 7, 1995, FDA notified Snoring Relief that it was violating the FDC Act by selling SnorBan without having submitted pre-market notification or receiving pre-market approval. On October 16, 1995, Snoring Relief submitted pre-market notification in the form of a letter from Snoring Relief's president; a journal article about anti-snoring mouthpieces; SnorBan fitting instructions; and a brochure written by Snoring Relief's president. Snoring Relief contended that its product was substantially equivalent to two other anti-snoring mouthpieces, both of which are available by prescription only. Snoring Relief wanted to make SnorBan available over-the-counter, and compared its self-fitting device to athletic mouth guards. Also, its application contended that there was not an increased risk of undiagnosed sleep apnea.

On April 1, 1996, FDA denied Snoring Relief's request to market SnorBan over-the-counter. FDA's Dental Devices Branch of the Office of Device Evaluation enlisted Dr. Susan Runner, a doctor of dental surgery and the Senior Regulatory Review Officer, to compare SnorBan to the prescription-only, anti-snoring mouthpieces. Dr. Runner concluded that marketing SnorBan without a prescription raised two new questions about safety and effectiveness: (1) It would require the patient to distinguish between simple snoring and obstructive sleep apnea, a potentially life-threatening condition; and (2) It would require the patient to determine if she has any temporomandibular joint (TMJ) disease that would not permit the use of an oral appliance. If the patient advances her jaw too far forward in fitting the de-

---

**1.** This is also referred to as a § 510(k) notification after the parallel citation in the FDC Act. Pre-market approval (PMA) is a much more onerous process than pre-market notification, with PMA requiring detailed medical studies about the product's safety and effec-

tiveness. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (finding a substantial equivalency determination under pre-market notification to take about 20 hours and PMA review to take about 1,200 hours).

vice, she could suffer TMJ. Dr. Runner concluded that "selection of which patients are appropriate for oral appliance therapy should always be made by the health professional." Based on this evaluation, FDA denied SnorBan's request for an exemption and found that SnorBan is a Class III device requiring pre-market approval before it can be legally marketed.

Before and after FDA's final decision, Snoring Relief marketed SnorBan without pre-market approval. On February 22, 1996, FDA sent Snoring Relief a warning letter about this continued violation. On April 15, 1996, Snoring Relief responded not by asking to market SnorBan with a prescription, but by asking for a waiver from the pre-market notification requirement. Snoring Relief said its product was similar to the Stop Snore Collar, a pillow-like anti-snoring device that only required an apnea warning label. FDA disagreed, and in a May 9, 1996 letter distinguished mouthpieces from anti-snoring devices used externally such as pillows or nasal strips.

In a July 8, 1996 letter to FDA, Snoring Relief dismissed the distinction between intra-oral and extra-oral anti-snoring devices, and offered to provide a warning label about sleep apnea with its product. On July 23, 1996, FDA rejected Snoring Relief's continued attempts to market SnorBan without a prescription. FDA also warned against the illegal marketing of SnorBan. Snoring Relief continued to distribute its unapproved device without a prescription.

On August 14, 1997, the government filed an *in rem* seizure action alleging that SnorBan is an adulterated, Class III device under 21 U.S.C. § 351(f)(1)(B), because it lacked pre-market approval under § 360(e) and because it was "misbranded" under § 352(f)(1) for a lack of adequate directions for use. Pursuant to a warrant, the product was seized on August 19, 1997. Snoring Relief responded by denying the government's claims and counterclaiming that FDA's (1) refusal to exempt SnorBan from pre-market notification or approval and (2) its refusal to approve SnorBan were "arbitrary, capricious, and contrary to law." Both sides filed for summary judgment.

Judge Levi found that SnorBan was adulterated under 21 U.S.C. § 351(f)(1)(B) because Snoring Relief did not dispute that SnorBan is a Class III device requiring pre-market approval, there was no approval in effect, and SnorBan was not exempt from approval. Judge Levi also found that "the seized cartons of SnorBan are subject to condemnation" and that FDA's decisions refusing to clear SnorBan for non-prescription use were not "arbitrary and capricious." Judge Levi limited his review to the administrative record. He found that FDA made a rational distinction between anti-snoring pillows and mouthpieces, and that FDA treats all anti-snoring mouthpieces the same. Finally, he concluded that FDA "articulated rational safety concerns" about increased risk of TMJ and undiagnosed sleep apnea. Snoring Relief timely appealed.

## II. STANDARD OF REVIEW

We review the district court's decision to grant the government summary judgment and the denial of the cross-motions for summary judgment de novo. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.1999). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

## III. DISCUSSION

In affirming the district court's decision, we seek to clarify that in a seizure case involving the review of an agency's decision courts should apply the arbitrary and capricious standard.

### A. ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

Snoring Relief argues that the district court applied the incorrect standard of re-

view to the defenses that Snoring Relief raised to FDA's adulteration claim as part of the seizure action. Snoring Relief claims that SnorBan should not be an adulterated product because it was exempt from FDA regulation. Because this is a seizure action, Snoring Relief claims that the district court should not have applied the arbitrary and capricious standard. Rather, Snoring Relief contends that it has the burden of proving by a preponderance of the evidence that it was exempt from FDA regulation.

Snoring Relief's argument about the standard of review fails because: (1) Review of FDA regulation and adulteration decisions is governed by the Administrative Procedures Act (APA); (2) The seizure precedents cited by Snoring Relief are not on point; (3) Snoring Relief conceded in its counterclaims that the arbitrary and capricious standard applies; and (4) As a practical matter, Snoring Relief is suggesting that the courts review the agency's decision de novo.

### 1. *The Administrative Procedure Act (APA)*

■ FDA decisions about adulteration and regulation are reviewed under the APA, which states that an agency's decision should not be overturned unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We have defined the arbitrary and capricious standard as follows:

> A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise."

*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n,* 92 F.3d 940, 942 (9th Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443

(1983)). Most importantly, "[r]eview under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." *Id.* (citing *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)); *Presidio Golf Club v. National Park Service,* 155 F.3d 1153, 1160 (9th Cir.1998) (citations omitted).

In *Bowen,* we recently applied the arbitrary and capricious standard to a FDC Act case about whether a Class III medical device was adulterated. *See Bowen,* 172 F.3d at 687. " 'Congress gave FDA sweeping discretion in determining the classification of devices and therefore in judging the safety and effectiveness of medical devices.' " *Id.* (quoting *Ethicon, Inc. v. FDA,* 762 F.Supp. 382, 386 (D.D.C. 1991)). In *Bowen,* the appellant challenged whether a machine that sterilizes dental handpieces was a "device" under the FDC Act's statutory definition, and whether FDA acted arbitrarily and capriciously by classifying the sterilizing machine as a Class III device subject to pre-market approval. *See id.* at 684.

■ In this case, Snoring Relief did not contest that SnorBan was a "device" pursuant to the language of the FDC Act, nor did it petition for reclassification. Snoring Relief argues that "SnorBan should not be regarded as a Class III adulterated device; instead as with similar OTC [over-the-counter] anti-snoring products, SnorBan should be exempt from FDA regulation." Snoring Relief claims to be exempt from FDA regulations (or be cleared for marketing) based on its pre-market notification to FDA that SnorBan is "substantially equivalent" to anti-snoring pillows, collars, and nasal strips. FDA repeatedly rejected these contentions. Initially, FDA compared SnorBan to other anti-snoring mouthpieces available by prescription only, concluding that a non-prescription anti-snoring mouthpiece presented new safety and effectiveness concerns about undiagnosed sleep apnea and TMJ. On two subse-

quent occasions, FDA rejected Snoring Relief's comparisons of SnorBan to anti-snoring pillows, collars, and nasal strips. These agency decisions should be narrowly reviewed under the APA's arbitrary and capricious standard. Although Snoring Relief's exemption argument is slightly different than the one in *Bowen*, appellants in both cases are trying to avoid FDA decisions that the medical devices in question are Class III adulterated devices without pre-market approval.

### 2. *Snoring Relief's Seizure Action Precedents*

■ Snoring Relief tries to avoid the narrow standard of review under the APA and to reopen the administrative record[2] by dwelling on the fact that this is a seizure action. Snoring Reliefs cites two seizure cases, *United States v. $^{45}/_{194}$ Kg. Drums of Pure Vegetable Oil,* 961 F.2d 808, 812 (9th Cir.1992), and *United States v. Article of Device * * * Toftness,* 731 F.2d 1253, 1258–62 (7th Cir.1984). In these cases, the appellants argued that their products were exempt from FDC Act misbranding provisions. Neither of these cases, however, involved a district court's review of an agency decision. For example, in *Pure Vegetable Oil,* the company promised to stop exporting the oil to the United States. *See Pure Vegetable Oil,* 961 F.2d at 810. FDA never reviewed the product as part of an exemption petition. Thus, Snoring Relief's cases are distinguishable because they only involved FDA seizure actions; they did not involve review of prior FDA decisions.

### 3. *Snoring Relief's Counterclaims*

Snoring Relief conceded before the district court that with regard to its counterclaims, the proper standard of review is arbitrary and capricious. Snoring Relief

argued to the district court that FDA's refusal to exempt its product from pre-market notification or to clear its pre-market notification petition was "arbitrary, capricious, and contrary to law." Snoring Relief's standard of review argument regarding the seizure action is severely undercut by the "arbitrary and capricious" formula it employs with counterclaims that are identical to its defenses to the seizure action.

### 4. *Pragmatic Concerns*

■ In arguing that the arbitrary and capricious standard of review does not apply, Snoring Relief implicitly suggests that the district court should have reviewed FDA's decision de novo. Snoring Relief contends that as a defense to the seizure action, it has the burden of proving by a preponderance of the evidence that it was exempt from FDA regulations. This argument, however, conflates the standard of review with the burden of proof. The arbitrary and capricious standard of review cannot be replaced by the preponderance of the evidence burden of proof. What Snoring Relief really wants is for the district court (and this court) to review FDA's decision de novo. But, as the government said, "the issue is an agency decision not to exercise its enforcement discretion to waive the pre-market notification requirement for SnorBan. FDA is entitled to decide how to exercise its discretion, and the Court only reviews that decision under the arbitrary and capricious standard." We agree. As a practical matter, Snoring Relief's argument is unpersuasive. Agency decisions, even if accompanied by a seizure action, should be reviewed under the arbitrary and capricious standard.

**2.** Snoring Relief also contends that the district court erred in not considering additional declarations by its experts. These experts already had submitted declarations about why SnorBan is safe and effective as part of the administrative record. The district court properly recognized that "[j]udicial review of

agency action is generally limited to review of the administrative record." *Northcoast Environmental Center v. Glickman,* 136 F.3d 660, 665 (9th Cir.1998). Although there are a few narrow exceptions to this rule, *see id.,* the district court did not err by only considering the administrative record.

## B. *SNORING RELIEF'S COUNTER-CLAIMS*

█ Snoring Relief also argues that the district court erred in rejecting its counterclaims that FDA acted arbitrarily and capriciously in refusing to exempt Snor-Ban from FDA regulation or to clear SnorBan's pre-market notification. The district court reviewed FDA's safety and effectiveness concerns about SnorBan regarding undiagnosed sleep apnea and potential TMJ, and concluded that Snoring Relief did not submit any new evidence to FDA suggesting that anti-snoring mouthpieces should be available without a prescription. The two articles that Snoring Relief submitted about anti-snoring mouthpieces both suggest that the mouthpieces should be fitted by medical personnel. Snoring Relief's two experts did not indicate whether they had any clinical experience with SnorBan. Furthermore, Snoring Relief submitted no medical studies suggesting that anti-snoring mouthpieces were safe for non-prescription use.

Snoring Relief argues that warning labels about sleep apnea and TMJ would have been sufficient, and that FDA allows such warnings with other anti-snoring products such as anti-snoring pillows, collars, and nasal strips. Snoring Relief claims that this "disparate treatment" by FDA was arbitrary and capricious, citing *Willapoint Oysters v. Ewing*, 174 F.2d 676, 697 (9th Cir.1949). In *Willapoint Oysters*, we struck down an FDA requirement as arbitrary and capricious that forced western canners to label their products "Pacific Oysters" but allowed southern and eastern canners to label the very same product just "Oysters." *See id.*

*Willapoint Oysters* is inapposite because in this case the products that Snoring Relief are using for comparison are not substantially equivalent. Snoring Relief's initial pre notification request asked FDA to compare SnorBan only to anti-snoring mouthpieces available by prescription. FDA found SnorBan different from these mouthpieces because SnorBan's self-fitting and lack of prescription produced concerns about sleep apnea and TMJ. After this initial rejection, Snoring Relief asked FDA to compare SnorBan to external anti-snoring devices. FDA was not arbitrary and capricious in finding SnorBan was not substantially equivalent to these products—the agency consistently has found that extra-oral anti-snoring devices such as nasal strips present "no real safety concerns." Given the narrow arbitrary and capricious standard of review and the lack of contrary evidence presented by Snoring Relief, FDA's distinctions among these products were reasonable. The district court did not err in rejecting Snoring Relief's counterclaims.

## C. *REMAND TO FDA*

█ Snoring Relief argues that at a minimum the district court erred in refusing to remand this case to FDA to consider whether a warning label about sleep apnea would be sufficient. On two prior occasions, FDA had rejected Snoring Relief's suggestions that a warning label about apnea would ameliorate the agency's safety and effectiveness concerns. A warning label about apnea ignores the concerns that SnorBan's self-fitting poses to potential sufferers of TMJ. Snoring Relief says apnea was FDA's "primary" concern, and TMJ was a "secondary" concern. This is incorrect. Both safety concerns warranted FDA's rejection of Snoring Relief's pre-market notification. A remand in this case, therefore, would not be appropriate.

AFFIRMED.